UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CARMILLA N. FLORES,

        Plaintiff,

v.                                                      Case No. 8:22-cv-958-WFJ-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, it is recommended that the Commissioner's decision be affirmed.

### I.

### A.    Procedural Background

Plaintiff filed an application for a period of disability and DIB (Tr. 220–23). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 87, 103). Plaintiff then requested an administrative hearing (Tr. 140). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff

_____

[1] Dr. Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kilolo Kijakazi should be substituted for Commissioner Andrew M. Saul as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

appeared and testified (Tr. 34–62).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 7–25).  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1–6).  Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B.    Factual Background and the ALJ's Decision

Plaintiff, who was born in 1986, initially claimed disability beginning June 6, 2019 (Tr. 81). After the hearing before the ALJ, Plaintiff amended her alleged onset date to January 1, 2021 (Tr. 234).  Plaintiff obtained a ninth-grade education (Tr. 248).  Plaintiff's past relevant work experience included work as a waitress and cleaner (Tr. 248).  Plaintiff alleged disability due to PTSD, anxiety, depression, and extreme panic attacks (Tr. 247).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through March 31, 2022 and had not engaged in substantial gainful activity since January 1, 2021, the amended alleged onset date (Tr. 13).  After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: depression, anxiety, personality disorder, and post-traumatic stress disorder (PTSD) (Tr. 13). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13).

The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform:

> a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, carry out, and remember no more than simple instructions with occasional decision making and occasional changes in a work setting; and can have no contact with the public, and occasional contact with coworkers and supervisors.

(Tr. 15). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 16).

Given Plaintiff's background and RFC, the vocational expert ("VE") testified that Plaintiff could not perform her past relevant work as a waitress, informal (DOT 311.477-030) but would be capable of performing Plaintiff's past relevant work as a cleaner, housekeeping (DOT 323.687-014) as actually performed, but not as generally performed (Tr. 19, 57–59). Considering Plaintiff's noted impairments and the assessment of the VE, the ALJ determined Plaintiff could perform her past relevant work as a cleaner as actually performed, but not as generally performed (Tr. 19). Additionally, given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a marker (DOT 209.587-034), routing clerk (DOT 222.687-022), and router (DOT 222.587-038) (Tr. 60). Accordingly, based on Plaintiff's age,

education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 20).

## II.

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an "impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4). If the claimant cannot perform the tasks

required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the

findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

## III.

Plaintiff argues that the ALJ erred in five respects. First, Plaintiff argues the ALJ erred in failing to include restrictions in the RFC related to Plaintiff's moderate limitations in the paragraph B category of maintaining concentration, persistence, and pace (Doc. 15, at 13). Second, Plaintiff contends that the ALJ erred in finding Plaintiff could perform work with a specific vocational preparation ("SVP") level of 2, given that the SSA previously advised Plaintiff she could perform work requiring only a very short on-the-job training period equating to SVP level 1 (Doc. 15, at 16). Third, Plaintiff argues the ALJ improperly found Plaintiff had past relevant work as a housekeeping cleaner because the Dictionary of Occupation Titles ("DOT") definition differs from how Plaintiff performed the work (Doc. 15, at 21). Fourth, Plaintiff contends the ALJ erred in finding Plaintiff could perform certain jobs because the RFC prohibited contact with the public and some U.S. Bureau of Labor Statistics surveys indicate those jobs require contact with the public (Doc. 15, at 23). Fifth, Plaintiff argues the ALJ erred in failing to properly evaluate the opinions of consultative examining psychologist Dr. Kindelan in three respects (Doc. 15, at 25).

For the following reasons and as to each of Plaintiff's arguments, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

### A. Maintaining Concentration, Persistence, and Pace

Plaintiff argues the ALJ erred in failing to include restrictions in the RFC related to Plaintiff's moderate limitations in the paragraph B category of maintaining concentration, persistence, and pace (Doc. 15, at 13).

At steps two and three of the sequential evaluation process, agency regulations require a "special technique" be used by the ALJ when evaluating mental impairments. *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005); 20 C.F.R. § 404.1520a(a). Essentially, this technique requires an assessment of how the claimant's mental impairments impact four broad functional areas, also referred to as "paragraph B"[2] criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). In rating the degree of limitation, the SSA employs a five-point scale in evaluating Plaintiff's limitations in each of the paragraph B criteria: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). When considering a claimant's mental impairments, the ALJ must incorporate into the written decision the pertinent findings and conclusions based on the technique and must make a specific finding as to the degree of limitation for each of the paragraph B criteria. *Moore*, 405 F.3d at 1213-14; 20 C.F.R. § 404.1520a(e)(4).

---

[2] The term "paragraph B" criteria refers to the ALJ's decision at step two in deciding whether a claimant suffers from a severe impairment or at step three in deciding whether a claimant's severe impairment qualifies under a Listing. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1325 (11th Cir. 2021) ("The ALJ's analysis as to the Paragraph B criteria is part of steps two and three of the sequential analysis."). The criteria are the same.

In contrast, at step four the ALJ forms a claimant's RFC which is designed to capture "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1). To determine a claimant's RFC, the ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1). In rendering the RFC, the ALJ must consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e); *see Schink,* 935 F.3d at 1268 ("Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC."); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole"). In doing so, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. 20 C.F.R. §§ 404.1529(c)(3)(i)–(vii), 404.1545(a)(3); Social Security

Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

Limitations in the paragraph B criteria, *see* 20 C.F.R. § 404.1520a, should not be conflated with limitations in a claimant's RFC, *see* 20 C.F.R. § 404.1545. The limitations in the paragraph B criteria help the ALJ determine the severity of a claimant's mental impairments or whether a claimant meets a listing, while limitations in the RFC help the ALJ determine the level of work that a claimant can perform. *Compare* 20 C.F.R. § 404.1520a, *with* 20 C.F.R. § 404.1545. That said, precedent suggests that where an ALJ finds a moderate limitation in one of the paragraph B criteria, the ALJ may be obligated to either include or otherwise "account for" the limitation, unless the ALJ explains how the claimant's ability to work is unaffected by the limitation. *See Winschel*, 631 F.3d at 1181. For example, in *Winschel*, the ALJ determined at step two that the claimant's mental impairments caused a moderate limitation in maintaining concentration, persistence, and pace. *Id*. However, because the ALJ "did not indicate that medical evidence suggested Winschel's ability to work was unaffected by this limitation, nor did he otherwise implicitly account for the limitation in the hypothetical" the Eleventh Circuit found the ALJ had erred. *Id*. Along the same lines, in *Schink v. Comm'r of Soc. Sec*, the Eleventh Circuit remanded because the ALJ did not provide any reasoning for failing to include *any* mental limitations in the RFC despite finding moderate limitations in the paragraph B assessment. 935 F.3d 1245, 1257, 1269 (11th Cir. 2019). The Eleventh Circuit explained that:

> Even the most favorable interpretation of the ALJ's opinion—namely, that the ALJ considered Schink's mental conditions in the RFC assessment *sub silentio* and implicitly found that they imposed no significant limitations on his work-related mental capacities—would not permit us to affirm because, as our precedent holds, the ALJ's "failure ... to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal" in its own right.

*Id.* (citations omitted). However, the Eleventh Circuit has said an ALJ sufficiently accounts for a moderate limitation in concentration, persistence, or pace by limiting an individual to simple, unskilled work when the medical evidence demonstrates the ability to perform such work. *See Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017) (finding that "[b]ecause the medical evidence showed that [the claimant] could perform simple, routine tasks despite her limitations in concentration, persistence, and pace, the ALJ's limiting of [the claimant's RFC] to unskilled work sufficiently accounted for her moderate difficulties in concentration, persistence, and pace"); *Duval v. Comm'r of Soc. Sec.*, 628 F. App'x 703, 713 (11th Cir. 2015) ("[T]he ALJ accounted for [the claimant's] moderate limitations in concentration, persistence, or pace by limiting him to simple, routine, and repetitive tasks, which medical evidence showed he could perform.").

Here, at the third step of the sequential process in making the paragraph B determination, the ALJ found that Plaintiff had moderate limitations with regard to concentrating, persisting, or maintaining pace (Tr. 14). The ALJ acknowledged Plaintiff's function report which indicated she was limited in "talking and concentration" (Tr. 14, 271). However, the ALJ noted that several medical sources reported no issues in this category (Tr. 14). For example, the ALJ specified that all

of the notes from Plaintiff's visits with Dr. Bellino reported that her "consciousness, orientation, concentration, memory, fund of knowledge, abstraction, judgment, insight, and attitude" were "all within normal limits" (Tr. 14, 326, 330, 334, 338, 342). Additionally, the ALJ looked to the September 18, 2020 mental status examination from LCSW Mitchell which reported that Plaintiff was "focused, not easily distracted, and had a normal attention span" (Tr. 14, 406). The ALJ also looked to Plaintiff's records from prenatal visits to East Manatee County Rural Health Services, in which providers said she consistently reported "that she was able to care for herself, did not have difficulty concentrating, remembering, or making decisions, and did not have difficulty doing errands alone" (Tr. 14, 376, 380, 387, 394). The ALJ also evaluated Plaintiff's demeanor and testimony at the hearing, noting she was able to concentrate, was able to understand the questions without requesting repetition or rephrasing, and was able to give relevant responses to the questions (Tr. 15). In concluding the step three inquiry, the ALJ specified that the "limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment" and the mental residual functional capacity assessment "requires a more detailed assessment of the areas of mental functioning" (Tr. 15). The ALJ then stated that "[t]he following residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis" (Tr. 15).

The ALJ's RFC limits Plaintiff to jobs which require understanding, carrying out, and remembering "no more than simple instructions with occasional decision

making and occasional changes in a work setting" with "no contact with the public, and occasional contact with coworkers and supervisors" (Tr. 15). In reaching this determination, the ALJ considered Plaintiff's medical history, medical source statements, medical opinions, daily activities, observations of Plaintiff at the hearing, Plaintiff's statements regarding her symptoms, and medication history in forming Plaintiff's RFC.

First, the ALJ considered Plaintiff's application wherein she alleged her ability to perform substantial gainful activity was limited due to PTSD, anxiety, depression, and extreme panic attacks (Tr. 16, 247). In her function report, Plaintiff reported that the symptoms from her impairments made it hard for her to eat, sleep, and be around people (Tr. 16, 266). Plaintiff explained that she had at least 12 to 15 panic attacks a week and that she was limited in talking, concentration, and getting along with others (Tr. 16, 266–67, 269, 271). However, the ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record (Tr. 16). The ALJ looked to records from Dr. Bellino between March 7, 2019 and January 3, 2020 which, while "handwritten, and not completely legible," showed Plaintiff was participating in psychotherapy, was prescribed psychiatric medication, and was noted to be within normal limits with respect to her consciousness, orientation, concentration, memory, fund of knowledge, abstraction, judgment, insight, and attitude (Tr. 16,

324–46, 351–52). The ALJ then noted that Plaintiff stopped seeing Dr. Bellino and there was a gap in her treatment until June 17, 2020 when she visited Roshini Patel, MD at East Manatee County Rural Health Services (Tr. 17, 433). At this visit, she requested a refill of her psychiatric medications, which had last been prescribed in February 2020 (Tr. 17, 439). Plaintiff returned to East Manatee County Rural Health Services two months later where she was seen by Morris Bollegraf, DO, who noted that she reported that she had been on benzodiazepine therapy for many years, and had run out of clonazepam (Tr. 17, 415). Dr. Bollegraf reissued a prescription for clonazepam and directed Plaintiff to follow up with Dr. Hollet, which Plaintiff did the following month (Tr. 17, 407, 415–16). At this visit, the ALJ noted that Plaintiff reported she was going through a divorce and suffered from a "depressed mood, anhedonia, fatigue, irritability, difficulty concentrating, anergy, and feelings of guilt and worthlessness" (Tr. 17, 410). Dr. Hollet directed Plaintiff to wean off citalopram and start Effexor and to return for a follow up visit in one month around October 1, 2020 (Tr. 17, 410).

The ALJ then noted that Plaintiff visited with LCSW Kitchell on September 18, 2020 where she was reported to be well groomed, displayed good hygiene, and was appropriately dressed, cooperative, pleasant, and maintained good eye contact (Tr. 17, 403, 406). LCSW Kitchell noted that Plaintiff was focused, not easily distracted, and had a normal attention span (Tr. 17, 406). Plaintiff's speech was normal in volume, her memory was intact, her thought processes were intact, goal directed and logical, and her judgment and insight were intact (Tr. 17, 406). LCSW

Kitchell noted that Plaintiff wanted to wean off benzodiazepine medications and deal with her mental health symptoms naturally (Tr. 17, 406).

The ALJ highlighted that Plaintiff did not return to Dr. Hollet and instead the next report of Plaintiff seeking medical care was from March 5, 2021 when she returned to East Manatee Rural Health Services, for a pregnancy test which confirmed she was pregnant (Tr. 17, 398, 403). Plaintiff returned for her first obstetrics visit on March 19, 2021 (Tr. 393). At this visit, Elana Dolskaya, MD noted that Plaintiff reported that she had a history of anxiety but had stopped taking all of her medication due to her pregnancy (Tr. 17–18, 393). Plaintiff returned for prenatal visits on March 19, 2021, March 31, 2021, and April 20, 2021, and reported no problems with the pregnancy, that she was able to care for herself, did not have difficulty concentrating, remembering, or making decisions, and did not have difficulty doing errands alone (Tr. 18, 379–80, 386–87, 393–94). The ALJ noted that the most recent medical reports in the record were from prenatal follow up visits to East Manatee County Rural Health Services on June 10, 2021, July 2, 2021, and July 12, 2021 which note that Plaintiff reported that she had been prescribed clonazepam and citalopram by an outside mental health provider (Tr. 18, 541, 545).[3]

The ALJ then evaluated the medical opinions in the record. First, the ALJ considered the report from the State agency psychological consultant, Christina

---

[3] The ALJ states—and Plaintiff does not dispute—that there are no reports in the record showing that the claimant visited a mental health provider in 2021 (*see* Doc. 15).

Grand, Psy.D, who opined that the symptoms from Plaintiff's mental impairments caused a moderate limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself (Tr. 18, 99). The ALJ found that the opinion of Dr. Grand was partially persuasive, because it was "generally consistent with and supported by the reports of the objective clinical observations made by Plaintiff's providers" (Tr. 18) However, the ALJ stated that the evidence supported the finding that Plaintiff had a mild, rather than a moderate limitation in understanding, remembering, or applying information, and a moderate, rather than mild, limitation in adapting or managing oneself (Tr. 18). Second, the ALJ acknowledge that on December 2, 2019, Dr. Bellino signed a medical source statement in which he opined that Plaintiff was not capable of sustaining work activity for eight hours a day, five days a week (Tr. 18, 350). The ALJ found the opinion of Dr. Bellino not persuasive because it was not consistent with or supported by the reports from his examinations of Plaintiff, which consistently noted that her consciousness, orientation, concentration, memory, fund of knowledge, abstraction, judgment, insight, and attitude were all within normal limits (Tr. 18, 324–46, 351–52). Third, the ALJ considered the report from consultative psychological examiner Dr. Kindelan, who opined that Plaintiff was not able to sustain a 40-hour work week within a competitive work environment (Tr. 18, 363). The ALJ found the opinion of Dr. Kindelan not persuasive because it was based on a single video telephone call with

15

Plaintiff that occurred near the end of a six-month gap in her mental health treatment, Plaintiff was distracted during the call, and the findings were not consistent with or supported by the objective clinical findings by Plaintiff's other providers (Tr. 18, 355). Finally, the ALJ noted, the opinions of Dr. Bellino and Dr. Kindelan addressed an issue that is reserved to the Commissioner and were contrary to the fact that Plaintiff actually performed substantial gainful activity throughout 2020 (Tr. 18, 40–41).

Accordingly, the ALJ formed the RFC to limit Plaintiff to jobs which require understanding, carrying out, and remembering "no more than simple instructions with occasional decision making and occasional changes in a work setting" with "no contact with the public, and occasional contact with coworkers and supervisors" (Tr. 15). The ALJ stated that the RFC reflects Plaintiff's reported activities of daily living, and the objective medical findings and treatment that the ALJ evaluated—all of which the ALJ found "supported greater sustained capacity than alleged" by Plaintiff (Tr. 18–19). The ALJ also stated that the evidence showed that Plaintiff's subjective complaints and alleged limitations were not persuasive, and she retained the ability to perform work without exertional limitations, subject to the mental limitations set forth in the RFC (Tr. 19). The ALJ noted that Plaintiff did have some limitations as a result of her impairments, but had no limitation, impairment, or combination of impairments at a disabling level of severity (Tr. 19). As set out above, the ALJ considered Plaintiff's medical history, medical source statements, medical opinions, daily activities, observations of Plaintiff at the

hearing, Plaintiff's statements regarding her symptoms, and medication history in forming Plaintiff's RFC. It is thus clear that the ALJ considered Plaintiff's medical condition taken as a whole and the RFC is supported by substantial evidence.

Plaintiff contends the ALJ erred at step four of the sequential evaluation process by failing to include Plaintiff's step three mental limitations in the RFC determination, specifically, moderate limitations in the paragraph B category of maintaining concentration, persistence, and pace (Doc. 15, at 13). Plaintiff posits that the ALJ was required "to include the special technique limitations in the RFC assessment, to implicitly account for it in the RFC, or to otherwise explain why it was not included in the RFC" (Doc. 15, at 13 (citing *Winschel*, 631 F.3d at 1180–81)). In response, the Commissioner contends that the ALJ sufficiently accounted for Plaintiff's moderate limitations in maintaining concentration, persistence, and pace when forming the RFC (Doc. 17, at 4). Additionally, the Commissioner argues that Plaintiff fails to allege what additional limitations would have been needed to account for these limitations and the record evidence which would support it (Doc. 17, at 6).

The undersigned is not persuaded by Plaintiff's argument that the ALJ's RFC determination does not account for the ALJ's finding that she was moderately limited in the areas of concentration, persistence, and pace. This case is not in line with *Schink*; here, the ALJ *did* include mental limitations in the RFC. *Schink*, 935 F.3d at 1257, 1269. The ALJ's limiting of Plaintiff's RFC to understanding, carrying out, and remembering "no more than simple instructions with occasional decision

making and occasional changes in a work setting" sufficiently accounted for her moderate difficulties in concentration, persistence, and pace. *See Winschel*, 631 F.3d at 1180 ("But when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations."). As demonstrated above, this finding is supported by substantial evidence. Specifically, the ALJ considered Plaintiff's medical history, medical source statements, medical opinions, daily activities, observations of Plaintiff at the hearing, Plaintiff's statements regarding her symptoms, and medication history in forming Plaintiff's RFC. Finally, Plaintiff fails to explain what additional limitations she feels would more accurately capture her limitations (*see* Doc. 15, at 15).[4] The ALJ stated that the RFC reflects Plaintiff's reported activities of daily living, the objective medical findings, and treatment records which the ALJ found supported greater sustained capacity than alleged by Plaintiff (Tr. 19). The undersigned agrees.

---

[4] Plaintiff cites some illustrative examples of concentrating, persisting, or maintaining pace including:

> initiating and performing a task that you understand and know how to do, working at an appropriate and consistent pace, completing tasks in a timely manner, ignoring or avoiding distractions while working, changing activities or work settings without being disruptive, working close to or with others without interrupting or distracting them, sustaining and ordinary routine and regular attendance at work, and working a full day without needing more than the allotted number or length of rest periods during the day

(Doc. 15, at 15 (citing 20 C.F.R. § 404, Subpt. P, app. 1, 12.00(E)(3))). However, Plaintiff fails to describe any limitations relevant to her specific abilities that should have been included in the RFC.

Because there was no error in the formulation of the RFC, the ALJ's decision should be affirmed as to Plaintiff's first argument.

### B. SVP Level 2

Plaintiff contends that the ALJ erred in finding Plaintiff could perform work with a specific vocational preparation ("SVP") level of 2, given that the SSA advised Plaintiff she could perform work requiring only a very short on-the-job training period equating to SVP level 1 (Doc. 15, at 16).

Plaintiff refers to the disability examiners' findings which supported two prior disability determinations (Tr. 104, 107). The findings were contained in the attached explanations of those disability determinations and stated that Plaintiff's condition was not severe enough to prevent her from working because, among other things, she could perform work which requires "only a very short, on-the-job training period" (Tr. 104, 107). Plaintiff argues this assessment qualifies her for only SVP level 1 jobs but the jobs the ALJ found Plaintiff could perform are SVP level 2 jobs (Doc. 15, at 16).

Contrary to Plaintiff's argument, the ALJ was not bound by the disability examiners' findings. The SSA's initial determination is binding unless the claimant requests reconsideration, the agency revises the determination, or the claimant requests a hearing before an ALJ, and a decision is made. 20 C.F.R. §§ 404.905, 404.921. If, as here, a claimant requests an administrative hearing, the ALJ "must base [his or her] decision on the preponderance of the evidence offered at the hearing or otherwise included in the record." 20 C.F.R. § 404.953. Indeed, courts

in this district have rejected Plaintiff's exact argument. *See Hedges v. Comm'r of Soc. Sec.*, No. 2:19-cv-833-FtM-MAP, 2021 WL 1186836, at *9 (M.D. Fla. Mar. 30, 2021) (rejecting argument that ALJ was limited to SVP level 1 jobs because he was bound by statements at the initial and reconsideration level that claimant was capable of a job requiring "only a very short, on-the-job training"); *Roussin v. Comm'r of Soc. Sec.*, No. 2:20-cv-905-SPC-MRM, 2021 WL 6205948, at *12 (M.D. Fla. Dec. 16, 2021), *report and recommendation adopted*, 2022 WL 19698 (M.D. Fla. Jan. 3, 2022) (same).

As for Plaintiff's argument that the ALJ "gave no reason for ignoring the [SSA]'s statements that Plaintiff could perform work equivalent to SVP 1," this contention is similarly unavailing (Doc. 15, at 20). "Findings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate determination about whether [a claimant] disabled" are "inherently neither valuable nor persuasive as to the issue of whether [a claimant] is disabled." *See* 20 C.F.R. § 404.1520b(c)(2)–(3). SSA regulations explicitly provide that the ALJ "will not provide any analysis about how [the ALJ] considered such evidence in [his] determination or decision." 20 C.F.R. § 404.1520b. Accordingly, the Court finds Plaintiff's second issue does not warrant reversal.

## C. Past Relevant Work

Plaintiff argues the ALJ improperly found Plaintiff had past relevant work as a housekeeping cleaner because the Dictionary of Occupation Titles ("DOT") definition differs from how Plaintiff actually performed the work (Doc. 15, at 21).

During the sequential process, the ALJ compared the claimant's RFC with the physical and mental demands of the claimant's past relevant work. The ALJ, in determining whether a claimant can do her past relevant work, will consider a number of sources in determining whether the claimant can perform such work, including "the services of vocational experts or vocational specialists," or "other resources" such as the DOT. 20 C.F.R. § 404.1560(b)(2). The regulations explain that a VE may offer relevant evidence concerning the demands of a claimant's past relevant work, "either as the claimant actually performed it or as generally performed in the national economy." *Id.* Additionally, the regulations explain that the VE may respond to hypothetical questions about whether a person with the claimant's RFC would be able to meet the demands of the claimant's previous work, again "either as the claimant actually performed it or as generally performed in the national economy." *Id.* Thus, the regulations anticipate the Commissioner's reliance on evidence beyond the DOT and the potential for a claimant's past relevant work to be different than as generally performed in the national economy.

The ALJ found Plaintiff capable of performing past relevant work as a housekeeping cleaner, referencing the VE's citation of cleaner, housekeeper, DOT # 323.687-014 (Tr. 19). However, the ALJ found Plaintiff could perform the work

as actually performed but not as generally performed (Tr. 19). The ALJ based this decision on her RFC, the demands of the job as she described them, and the testimony of the VE (Tr. 19, 39–40, 55–59, 248, 274–81, 303–10).

Plaintiff argues that this conflicts with the DOT. The DOT's description of a housekeeping cleaner involves "[m]aintain[ing] premises of commercial, institutional, or industrial establishments, office buildings, hotel and motels, apartment houses, retirement homes, nursing homes, hospitals, schools, or similar establishments" (Doc. 15-1, at 21). In contrast, Plaintiff argues, she cleaned in private homes only (Doc. 15, at 21). The Commissioner contends that the ALJ did not find that Plaintiff could perform her past relevant work as defined in the DOT, so any conflict with the DOT is irrelevant (Doc. 17, at 10).

Plaintiff's argument is futile. The ALJ clearly found Plaintiff was able to perform her past relevant work *as she actually performed it,* not as the DOT defined it (Tr. 19). The ALJ's finding is expressly contemplated by the regulations. SSR 82-61, 1982 WL 31387 ("[W]here the evidence shows that a claimant retains the RFC to perform the functional demands and job duties of a particular past relevant job as he or she actually performed it, the claimant should be found to be 'not disabled.'"). Substantial evidence supports—and indeed, Plaintiff does not dispute—the ALJ's finding that Plaintiff could perform past relevant work as a cleaner, actually performed. The ALJ based this decision on her RFC, the demands of the job as she described them, and the testimony of the VE (Tr. 19, 39–40, 55–59, 248, 274–81, 303–10). As already discussed, Plaintiff's RFC is supported by

substantial evidence. Additionally, testimony was elicited from Plaintiff regarding the requirements of her past work (Tr. 40, 56–57). Further, the ALJ and VE specifically discussed the fact that Plaintiff's cleaning as actually performed differed from the job of cleaner as generally performed (Tr. 58–60). The VE specified that a person with Plaintiff's RFC could not perform the work as generally performed but could "as actually performed" (Tr. 59). A VE may offer an opinion that a claimant can perform past work, based on how she actually performed it, without relying on the DOT. 20 C.F.R. § 404.1560(b)(2); *see also Savor v. Shalala*, 868 F. Supp. 1363, 1365 (M.D. Fla. 1994) (noting approvingly that the VE testified about the previous occupations of the claimant in relation to the claimant's abilities). Accordingly, the ALJ did not err.

To the extent Plaintiff argues the ALJ was obligated to resolve a conflict between the DOT and Plaintiff's past relevant work as actually performed, that argument is similarly unavailing. To the extent that there is a conflict between VE testimony and the DOT here, such conflict would be irrelevant because the ALJ found Plaintiff could perform her past relevant work *as actually performed*, not as described in the DOT (Tr. 19). *See Dukes v. Saul*, No. 8:18-cv-2553-T-SPF, 2020 WL 755393, at *4 (M.D. Fla. Feb. 14, 2020) (determining that the ALJ had no duty to resolve at Step Four a conflict between the DOT and the VE's testimony because the VE testified that the claimant could perform her past relevant work as actually performed); *see also Hernandez v. Astrue*, 277 F. App'x 617, 625 (7th Cir. 2008) ("When a VE testifies that a claimant can still perform her past work as it was

actually performed, the DOT becomes irrelevant."); *Jasinski v. Barnhart*, 341 F.3d 182, 184–85 (2d Cir. 2003) ("[W]e know of no circuits that have found a "conflict" in a discrepancy between, on the one hand, the expert's description of the job that the claimant actually performed, and the Dictionary's description of the job as it is performed in the national economy.").

### D. Contact with the Public

Plaintiff contends the ALJ erred in finding Plaintiff could perform certain jobs because the RFC prohibited contact with the public and some sources indicate those jobs require contact with the public (Doc. 15, at 23). Plaintiff argues that all four jobs that the ALJ found Plaintiff could perform are in conflict with the RFC's prohibition on contact with the public (Doc. 15, at 23; Tr. 15). For this claim, Plaintiff relies on the Occupational Requirements Survey ("ORS"), a survey conducted by the U.S. Bureau of Labor Statistics under an agreement with the SSA that aims to "collect and publish information about specific work-related requirements that will be available to the public and used by SSA to help make decisions for its disability programs" (Doc. 15, at 24 (citing https://www.bls.gov/ors/)). According to 2021 ORS data, 79.4% of maids and housekeeping cleaners interact with the general public (Doc. 15, at 24 (citing Doc. 15-5, at 10)). Meanwhile, 2018 ORS data indicate that 72% of workers within SOC group 53-7065—which includes markers—interact with the general public (Doc. 15, at 24 (citing Doc. 15-6, at 8)). ORS data for 2021 indicate that 58.0% of workers within SOC group 43-5071—which includes routing clerk—interact with the

24

general public (Doc. 15, at 24 (Doc. 15-7, at 10)). Finally, 2021 ORS data indicate that 86.6% of workers within SOC group 43-9061—which includes router—interact with the general public (Doc. 15, at 24 (Doc. 15-8, at 9)).

Critically, Plaintiff did not present the ORS data to either the ALJ or the Appeals Council so it cannot be said that the ALJ or Appeals Council committed error in not considering it (*compare* Docs. 15-5, 15-6, 15-7, 15-8 *with* Tr. 311–13; 315–23). *See Koehler v. Kijakazi*, No. 2:22-cv-210-JES-KCD, 2023 WL 1098234, at *6 (M.D. Fla. Jan. 30, 2023) ("The ORS data cannot serve as a basis for error because plaintiff did not confront the VE with this ORS data during the hearing, or otherwise present it to the ALJ, or present it to the Appeals Council."). Fundamentally, to do so would be to exceed this court's standard of review. *See* 42 U.S.C. § 405(g); *Wilson*, 284 F.3d at 1221. Additionally, the Eleventh Circuit "has not placed an affirmative duty on the ALJ to independently investigate a conflict between the VE's testimony and job availability figures provided by the Bureau of Labor Statistics[.]" *Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 556 (11th Cir. 2019).

Rather than making any argument bespoke to this case, Plaintiff vaguely cites to two cases; neither apply here. In both cases, the ORS data had been properly raised either to the ALJ in a post-hearing memorandum or to the Appeals Council. *See Roth v. Comm'r of Soc. Sec.*, No. 6:20-cv-550-MRM, 2021 WL 4399125, at *8 (M.D. Fla. Sept. 27, 2021) (finding ALJ's failure to consider timely submitted post-hearing memorandum that included ORS data resulted in clear prejudice to

plaintiff); *Hernandez v. Saul*, No. CV 19-1299-AS, 2020 WL 1156402, at *5 (C.D. Cal. Mar. 10, 2020) (finding that plaintiff properly raised ORS data to the Appeals Council but noting that "ALJ was not obligated to address non-DOT sources at the hearing" and plaintiff's "counsel's own convoluted lay analysis of the statistical data from these sources is inadequate to demonstrate that the VE's job numbers were incorrect").

Thus, the undersigned cannot conclude that remand is necessary for the ALJ to consider the ORS data. Moreover, Plaintiff makes no argument the ALJ's analysis was in some other way inadequate. Accordingly, the ALJ's decision is not due to be remanded on these grounds.

### E.  Evaluating the Opinion of Dr. Kindelan

Plaintiff argues the ALJ erred in failing to properly evaluate the opinion of consultative examining psychologist Dr. Kindelan by: (1) failing to assess the opinion's supportability, (2) incorrectly stating that the opinion addressed issues reserved to the Commissioner, and (3) citing factors that are irrelevant to the persuasiveness of the opinion (Doc. 15, at 25).

Because Plaintiff applied for DIB in 2019, the new SSA regulations apply to how the ALJ considers medical opinions (Tr. 22). *See* 20 C.F.R. § 404.1520c; *see also Simon v. Comm'r of Soc. Sec.*, No. 19-14682, 2021 WL 3556433, at *7 n.4 (11th Cir. Aug. 12, 2021) (indicating that 20 C.F.R. § 404.1527 only applies to disability claims filed before March 27, 2017, and claims filed after that date are governed by 20 C.F.R. § 404.1520c, which prescribes a somewhat different framework for

evaluating medical opinions). Namely, under 20 C.F.R. § 404.1520c, an ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative finding, including from a claimant's medical source. 20 C.F.R. § 404.1520c(a). Rather, in assessing a medical opinion, an ALJ considers a variety of factors, including but not limited to whether an opinion is well-supported, whether an opinion is consistent with the record, the treatment relationship between the medical source and the claimant, and the area of the medical source's specialization. 20 C.F.R. § 404.1520c(c)(1)–(4). Medical evidence that does not rise to an opinion under the regulations is treated differently. This category of evidence includes "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of [the claimant's] impairments, [the claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3). The ALJ must consider other medical evidence but need not articulate her findings regarding its persuasiveness. *Dye v. Comm'r of Soc. Sec.*, No. 5:20-CV-459-NPM, 2022 WL 970186, at *4 (M.D. Fla. Mar. 31, 2022).

Dr. Kindelan stated that Plaintiff's memory functioning was below average; on the digit span subtest of the Wechsler Adult Intelligence Scale—Revised ("WAIS-R") she placed in the 1st percentile compared to other 35- to 44-year-old individuals (Tr. 359–60). Plaintiff did not know the capital of Florida or how many Senators were in the United States Senate (Tr. 360). Plaintiff performed poorly on

mental arithmetic word problems: when asked how many hours it would take to walk 24 miles at the rate of 3 miles an hour, she answered "16";  when asked how much change she would receive if she bought seven 2-cent stamps and gave the clerk a half dollar, she responded with "12 cents"; when asked what would be the price of one dozen apples if two apples cost 31 cents, she responded with "$1.93" (Tr. 361). Her responses to interpreting proverbs were varied: when asked to interpret the proverb "strike while the iron is hot," she stated, "I'm going to bite back if someone opens a can of worms" and she could not interpret the proverb "shallow brooks are noisy" at all (Tr. 362). Dr. Kindelan assessed her intellectual functioning as low-average (Tr. 362). Dr. Kindelan assessed her mood as anxious, distressed, overwhelmed, and sad, with compatible affect (Tr. 361). Dr. Kindelan diagnosed generalized anxiety disorder; social anxiety disorder; panic disorder; post traumatic stress disorder; major depressive disorder, moderate; and insomnia disorder (Tr. 363). Dr. Kindelan stated that in his professional opinion, Plaintiff would not be able to sustain a 40-hour workweek within a competitive work environment (Tr. 363).

The ALJ referenced Dr. Kindelan's report during his assessment of Plaintiff's medical records. The ALJ noted that Dr. Kindelan reported diagnostic impressions of generalized anxiety disorder, social anxiety disorder, panic disorder, PTSD, major depressive disorder, and insomnia disorder and noted that his examination showed that the claimant's memory functioning was below average, she made errors on simple spelling and arithmetic questions, and had an extremely low score

on the digit span subtest (Tr. 17, 360–63). The ALJ acknowledged that Dr. Kindelan opined that Plaintiff was not able to sustain a 40-hour work week within a competitive work environment, but that she would be able to independently manage any benefits awarded to her (Tr. 17, 363). The ALJ noted that there was an approximate six-month gap in Plaintiff's treatment before Dr. Kindelan performed the consultative psychological examination on June 15, 2020, that Dr. Kindelan's examination of Plaintiff was completed via a video telephone call, and that "he described the circumstances of the evaluation as less than ideal, as the claimant was distracted by her 2-year-old daughter and a barking dog during the examination" (Tr. 17, 359).

The ALJ stated that he did not find the opinion of Dr. Kindelan persuasive because it was "based on a single video telephone call with the claimant that occurred near the end of a six-month gap in her mental health treatment, during which the claimant was distracted" (Tr. 18). The ALJ found that it was not consistent with or supported by the objective clinical findings reported by Plaintiff's other providers and was contrary to the fact that Plaintiff actually performed substantial gainful activity throughout 2020, the same year as the report (Tr. 18, 39–40, 234). Finally, the ALJ stated that Dr. Kindelan's report addressed an issue that is reserved to the Commissioner (Tr. 18).

Elsewhere in the opinion, the ALJ also contrasted Dr. Kindelan's report with the report from a mental status examination completed around the same time, by Jonni Kitchell, LCSW (Tr. 14, 355, 403). The report showed that Plaintiff's memory

was intact, and that her thought processes were intact, goal directed and logical (Tr. 406). Furthermore, the ALJ observed at the hearing that Plaintiff "paid good attention, was well focused, understood the questions, and gave relevant and detailed answers" (Tr. 14). The ALJ noted that Plaintiff was able to give "detailed responses to questions regarding the history of her employment, medical treatment, and prescribed medications" (Tr. 14). Finally, the ALJ noted that Plaintiff is the sole caretaker of her four children, who range in age from 3 to 18 years old, and there were no reported problems in their care or her own personal care (Tr. 14, 45, 267).

### Definition of Medical Opinion

Pursuant to SSA regulations, a "medical opinion" is defined as "a statement from a medical source about what [the claimant] can still do despite [his/her] impairments" and whether the claimant has any "impairment-related limitations or restrictions" regarding certain enumerated abilities. 20 C.F.R. § 404.1513(a)(2). In contrast, statements on issues reserved to the Commissioner are those that would "direct [the] determination or decision that [the claimant is] or [is] not disabled" and includes "[s]tatements that [the claimant is] or [is] not disabled, blind, able to work, or able to perform regular or continuing work[.]" 20 C.F.R. § 404.1520b(c)(3), (c)(3)(i). Because statements on issues reserved to the Commissioner are "inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled…," the ALJ is not obligated to "provide any analysis about how [the ALJ] considered

such evidence in [the ALJ's] determination or decision, even under § 404.1520c[.]" *See* 20 C.F.R. § 404.1520b(c)(3)(i).

The ALJ stated that Dr. Kindelan's opinion that Plaintiff was "not able to sustain a 40-hour work week within a competitive work environment" addressed an issue reserved to the Commissioner (Tr. 18). Plaintiff argues Dr. Kindelan did not opine on whether Plaintiff is able to perform regular or continuing work, but rather opined that in his professional opinion Plaintiff is not able to sustain a 40-hour workweek within a competitive work environment (Doc. 15, at 26; Tr. 363). For his part, the Commissioner argues Dr. Kindelan's opinion that Plaintiff was "not able to sustain a 40-hour work week within a competitive work environment" would mean that Plaintiff was not able to perform regular or continuing work and would direct a decision that she was disabled (Doc. 17, at 15).

The undersigned agrees that Dr. Kindelan's statement that Plaintiff was "not able to sustain a 40-hour work week within a competitive work environment" would "direct [the] determination or decision that [the claimant is] or [is] not disabled[.]" 20 C.F.R. § 404.1520b(c)(3); *see* SSR 96-8p,  1996 WL 374184, at *1 ("RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," and "[a]  'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). The Eleventh Circuit held that a similar statement—that a claimant "would find it difficult to hold a full-time job"—was an "issue is reserved to the Commissioner and was not entitled to any weight." *Romeo v. Comm'r of Soc. Sec.*,

686 F. App'x 731, 733 (11th Cir. 2017). Courts in this circuit have held similar statements regarding a claimant's capacity to work a full week or within a competitive work environment are considered statements on issues reserved to the Commissioner. *See Ring v. Berryhill*, No. 3:17-CV-1088-J-JBT, 2018 WL 11431661, at *2 (M.D. Fla. June 13, 2018) (holding that the statement that claimant "could not sustain full or part-time employment, was on an issue reserved to the Commissioner and could be discounted on that basis" while recognizing other portions of the opinion were not such statements reserved to the Commissioner); *Butler v. Kijakazi*, No. 8:20-CV-382-CPT, 2021 WL 4473132, at *7 (M.D. Fla. Sept. 29, 2021) (hold that an "opinion that the Plaintiff's limitations would render him 'unable to perform full -time competitive work,' . . . concerns an issue which rests solely within the province of the Commissioner);   *Fordyce v. Colvin*, 2017 WL 1080966, at *10 (S.D. Fla. Mar. 21, 2017) (finding that a physician's opinion that the plaintiff could not perform full-time sedentary work was neither entitled to significant weight nor was it dispositive because it was an opinion reserved to the Commissioner); *Carlson v. Acting Comm'r of Soc. Sec. Admin.*, No. 8:17-CV-2891-T-MCR, 2019 WL 1275096, at *7 (M.D. Fla. Mar. 20, 2019) (holding doctor opined on an issue reserved for the Commissioner in that he stated "it would be difficult for [Plaintiff] to return to work" and that he "cannot engage in full-time work activity").

Accordingly, the undersigned recommends rejecting Plaintiff's argument that the ALJ incorrectly determined that Dr. Kindelan's statement that Plaintiff was

"not able to sustain a 40-hour work week within a competitive work environment" is an issue reserved to the Commissioner.

Supportability

The undersigned's analysis with regard to Dr. Kindelan's opinion may end at the finding that the statement is on an issue reserved to the Commissioner. Under the applicable regulations, an ALJ is not required to analyze statements on issues reserved to the Commissioner because they are "inherently neither valuable nor persuasive to the issue of whether [the claimant is] disabled." 20 C.F.R. § 404.1520b(c). The ALJ therefore was not required to provide any analysis of Dr. Kindelan's statement. *See* 20 C.F.R. § 404.1520b(c)(3). However, if the Court were inclined to disagree and find Dr. Kindelan's statement were a medical opinion, analysis of Plaintiff's supportability argument would be necessary.[5] If this is the case, as demonstrated in the following, the undersigned would recommend finding the ALJ erred in his supportability analysis and remand the case.

In evaluating the persuasiveness of a medical opinion, the ALJ must explain how he or she considered the factors of supportability and consistency. 20 C.F.R. § 404.1520c(b); *Callahan v. Comm'r of Soc. Sec.*, No. 22-12701, 2023 WL 3736042, at *1 (11th Cir. May 31, 2023); *see Brown v. Comm'r of Soc. Sec.*, 2021 WL 2917562, at *4 (M.D. Fla. July 12, 2021) (collecting cases where failure to address supportability

---

[5] Indeed, though the ALJ found the statement was an issue reserved to the Commissioner and need not have analyzed the statement, the ALJ nonetheless seemed to evaluate the statement as a medical opinion, finding that the opinion was not consistent or supportable (Tr. 18).

and consistency factors in decision was reversible error). In contrast, the remaining persuasiveness factors are to be considered but the ALJ need not articulate his or her findings. 20 C.F.R. § 404.1520c(b)(2); *Callahan,* 2023 WL 3736042, at *1. "Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are" to support his or her medical opinion, the more persuasive the medical opinions will be. 20 C.F.R. §§ 404.1520c(c)(1). In contrast, "consistency" refers to the principle that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim," the more persuasive the medical opinion will be. 20 C.F.R. §§ 404.1520c(c)(2). In considering medical opinion evidence, the ALJ must therefore analyze whether a medical source's opinion is (1) supported by the source's own records; and (2) consistent with the other evidence of record. *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at * 3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (Apr. 21, 2021); *Callahan,* 2023 WL 3736042, at *1.

Plaintiff concedes that the ALJ addressed the consistency of Dr. Kindelan's opinion with the other evidence of record and instead avers that the ALJ did not address the supportability of the opinion as required by 20 CFR § 404.1520c(b)(2) (Doc. 15, at 27). Plaintiff argues the ALJ conflated the consistency and supportability requirements in stating Dr. Kindelan's opinion "is not consistent with or supported by the objective clinical findings reported by the claimant's other providers" (Doc. 15, at 27; Tr. 18).

34

Plaintiff's argument is persuasive. It is not clear what the ALJ relied upon within Dr. Kindelan's own notes or records in finding that Dr. Kindelan's opinion was not supported. The ALJ fails to cite to any of Dr. Kindelan's own treatment or examination notes to demonstrate how these might work to contradict his conclusion. *See McDaniel v. Comm'r of Soc. Sec.,* No. 6:21-CV-125-LHP, 2022 WL 11348279, at *5 (M.D. Fla. July 5, 2022) (remanding for failure to articulate consideration of the supportability factor because "the exhibits the ALJ references are from other medical sources—the ALJ nowhere explains how [the examiner's] own treatment and examination notes fail to support his opinions"); *Brown*, 2021 WL 2917562, at *4 ("[T]he ALJ must build a logical analytical bridge explaining what particular evidence undermined [the medical] opinions and why." (citations and quotation marks omitted)). Failure to do so is error. *Pierson v. Comm'r of Soc. Sec.*, No. 6:19-cv-01515, 2020 WL 1957597 at *6, 2020 U.S. Dist. LEXIS 72260 at *14 (M.D. Fla. Apr. 8, 2020) (stating that as to the ALJ's consideration of an opinion's supportability and consistency, "[t]he new regulations require an explanation, even if the ALJ (and the Commissioner) believe an explanation is superfluous"), *report and recommendation adopted*, 2020 WL 1955341 (M.D. Fla. Apr. 23, 2020).

First, the ALJ's statement that Dr. Kindelan's opinion "is not consistent with or supported by the objective clinical findings reported by the claimant's other providers" is not enough to constitute supportability analysis (Tr. 18). "Conclusory statements about consistency and supportability are insufficient to show that

substantial evidence supports the ALJ's decision." *Battie v. Kijakazi*, 2022 WL 4000728, at *6 (S.D. Fla. Aug. 9, 2022) (citing *Pierson*, 2020 WL 1957597, at *4); 20 C.F.R. 404.1520c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions ..."); *see also Works v. Saul*, 2021 WL 690126, at *15 (N.D. Ala. Feb. 23, 2021) (concluding that reversal and remand were necessary where an ALJ only stated that a medical opinion was "somewhat consistent with the entire record" because the revised regulations "require[] more than a conclusory statement, at least with respect to the supportability and consistency factors[,] so that a reviewing court can make a meaningful assessment of a challenge to an ALJ's evaluation of the persuasiveness of various medical opinions").

Further, the ALJ's remaining analysis does not supply the necessary reasoning. The ALJ stated that he did not find the opinion of Dr. Kindelan persuasive because it was "based on a single video telephone call with the claimant that occurred near the end of a six-month gap in her mental health treatment, during which the claimant was distracted" (Tr. 18). Despite the Commissioner's argument to the contrary, it is not clear to the undersigned that this is supportability reasoning. Rather, this evidence goes to Dr. Kindelan's relationship with the claimant, as well as the frequency and quality of the examination, which are other factors in 20 C.F.R. § 404.1520c(c). *See Ellis v. Acting Comm'r of Soc. Sec.,* No. 22-11647, 2023 WL 3730441, at *3 (11th Cir. May 31, 2023) (analyzing supportability factors separately from the number of times the claimant saw the examiner); 20 C.F.R. §

36

404.1520c(c)(1), (3)(i) (listing "[r]elationship with the claimant" which includes "[l]ength of the treatment relationship" as a factor apart from "[s]upportability"). Additionally, the ALJ noted that Dr. Kindelan's opinion is not persuasive because Plaintiff actually performed substantial gainful activity throughout 2020 despite reporting to Dr. Kindelan that same year that she had last worked in 2018 (Tr. 18, 39–40, 234, 357). However, this evidence goes to consistency, not supportability. 20 C.F.R. §§ 404.1520c(c)(1) (defining supportability as in reference to "the objective medical evidence and supporting explanations presented by a medical source" to support his or her medical opinion).

The Commissioner contends—and, in fact, the undersigned agrees—that Dr. Kindelan's examination of Plaintiff does not include "objective medical findings to support his opinion" (Doc. 17, at 16; Tr. 359–62). However, this reasoning originates not from the ALJ, but rather from the Commissioner. The ALJ on the other hand, has not provided enough analysis for the undersigned to determine his reasoning with regard to supportability. *See Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 733 (11th Cir. 2011) (a court will not affirm based on a post hoc rationale that "might have supported the ALJ's conclusion") (citation omitted). For the Court to attempt to guess what supports the ALJ's decision would require the Court to reweigh the evidence. *See Pierson*, 2020 WL 1957597, at *4; *Bloodsworth*, 703 F.2d at 1239. Accordingly, the undersigned recommends finding the ALJ erred in assessing the supportability of Dr. Kindelan's opinion.

All of that being said, while the undersigned recommends finding the ALJ erred, this recommendation is largely superfluous given that the undersigned also recommends finding that Dr. Kindelan's opinion is not a medical opinion which would mean the ALJ was not required to analyze the statement at all, much less its supportability. 20 C.F.R. § 404.1520b(c)(3). Accordingly, this recommended finding does not change the undersigned's ultimate recommendation that the ALJ's decision be affirmed.[6]

## IV.

Accordingly, for the foregoing reasons, it is hereby

RECOMMENDED:

1. The decision of the Commissioner be AFFIRMED.

2. The Clerk be directed to enter final judgment in favor of the Commissioner and close the case.

IT IS SO REPORTED in Tampa, Florida, on this 14th day of August, 2023.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

---

[6] Given the above conclusions, Plaintiff's third basis of challenging the ALJ's assessment of Dr. Kindelan's statement—that the ALJ based the analysis on "irrelevant factors"— does not require analysis. That said, if the undersigned were to consider the merits of the argument, the undersigned would find the argument lacking. Essentially, Plaintiff asks the court to reweigh the evidence that was before the ALJ. In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178 (citations omitted). Accordingly, were the merits of Plaintiff's third argument relevant, the undersigned would recommend rejecting the argument as unpersuasive.

## **NOTICE TO PARTIES**

A party has fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1). **Should the parties wish to expedite the resolution of this matter, they may promptly file a joint notice of no objection.**


cc:     Hon. William F. Jung
        Counsel of Record